UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| SUSAN M. BOLTZ-RUBINSTEIN, | : | |
| | : | Bky. No. 10-16541 ELF |
| Debtor. | : | |
| | : | |

# M E M O R A N D U M

## I.

Debtor Susan M. Boltz-Rubinstein ("the Debtor") commenced this chapter 13 bankruptcy case on August 3, 2010. By Notice dated August 27, 2010, the Clerk of the Bankruptcy Court advised all parties in interest that February 20, 2011 was the deadline set by Fed. R. Bankr. P. 4007(c) for filing complaints to determine the dischargeability of certain debts (i.e., debts that are nondischargeable under 11 U.S.C. §523(a)(2) and (4)). Hagens Berman Sobol Shapiro LLP ("the Hagens Firm"), a law firm that holds a claim against the Debtor that she vigorously contests, has filed a motion requesting an extension of the February 20, 2011 filing deadline. The Debtor opposes the extension.

The issue before the court is whether the Hagens Firm has established "cause" for an extension of time under Fed. R. Bankr. P. 4007(c).

My ruling on this issue is significant to both parties. Because the filing deadline expired after the Hagens Firm filed its motion, but prior to the hearing on the motion, the Hagens Firm will be unable to file a timely nondischargeability complaint if the Motion is denied. The net effect would be the discharge of its claim – provided that the Debtor can obtain confirmation of a chapter 13 plan and perform her obligations thereunder.

For the reasons set forth below, the Motion will be granted.

-1-

### III.  PROCEDURAL AND FACTUAL BACKGROUND

In order to understand the parties' dispute and the relevant considerations in determining whether there is "cause" to grant the extension of time under Fed. R. Bankr. P. 4007(c), it is necessary to review the somewhat convoluted procedural history of the litigation between the Hagens Firm and the Debtor.  Much of this history first came to the attention of this court when the Hagens Firm filed a Motion for Relief from the Automatic Stay on October 12, 2010.  (Bky. No. 10-16541, Doc. # 31).

In July 2008, the Debtor and her spouse, Eran Rubinstein (collectively, "the Rubinsteins"), entered into an "of counsel" relationship with the Hagens Firm.  According to the Hagens Firm, the Rubinsteins were looking for a law firm to support their efforts to extend and develop a securities fraud law practice and the Hagens Firm was interested in the possibility that the Rubinsteins could assist the firm in developing its international clientele.

The parties' relationship soon soured.  On June 30, 2009, the Hagens Firm filed a complaint against the Debtor and her spouse in the U.S. District Court for the Western District of Washington ("the Washington Court"), docketed at No. 2:09-cv-00894 ("the Washington Action").  In the Amended Complaint (filed two weeks later on July 14, 2009), the Hagens Firm asserted claims for breach of contract, breach of the duty of good faith and fair dealing and breach of fiduciary duty.  (Amended Complaint ¶¶ 82-97) (Washington Action, Doc. # 2).[1]

---

[1] The factual allegations supporting the Hagens Firm's claims are summarized in Paragraphs 4 and 6 of the Amended Complaint as follows:

> 4. The Rubinsteins withheld, among other things, critical information identifying purported clients and other information necessary for [the Hagens Firm] to run
>
> (continued...)

On July 9, 2009, the Rubinsteins filed their own action against the Hagens Firm, naming Steve W. Berman, the Managing Partner of the Hagens Firm and the head of its securities practice, as a co-defendant. The Rubinsteins' action was filed in the Court of Common Pleas, Bucks County, Pennsylvania, but one week later was removed to the U.S. District Court for Eastern District of Pennsylvania and docketed at No. 09-cv-03158 ("the First E.D. Pa. Action"). In their Complaint in the First E.D. Pa. Action, the Rubinsteins asserted claims for breach of contract, defamation, intentional interference with actual and/or prospective business relationships and contracts and "fraudulent inducement." (Complaint ¶¶110-136) (First E.D. Pa. Action, Doc. # 1).

After the competing Complaints were lodged in the two federal courts on the east and west coasts, the parties battled fiercely over venue. The Hagens Firm won that battle. On October 7, 2009, the court in the First E.D. Pa. Action placed the action in civil suspense. (First

---

[1](...continued)

> conflict checks and assess the potential claims of Australian entities; refused to answer questions posed by [the Hagens Firm] management in its effort to supervise the Rubinsteins and representations that they were purportedly making on behalf of the firm; unilaterally "fired" [the Hagens Firm's] Managing Partner and insisted on dealing only with one lawyer in the firm's Boston office; filed a frivolous grievance against the Managing Partner with the Washington State Bar Association; refused to direct to entities with whom they were ostensibly communicating information as directed by [the Hagens Firm] management; purported to sign three Australian entities to unauthorized retainer agreements; refused to submit time records to the firm as required by the Agreement, and otherwise disregarded the Agreement.
>
> . . .
>
> 6. While receiving generous compensation and reimbursement of expenses, the Rubinsteins worked on their own agenda at the expense of the firm, ignored and failed to perform their obligations under the Agreement, and otherwise failed to discharge their duties of loyalty and full disclosure to the firm.

E.D. Pa. Action, Doc. # 19). On October 22, 2009, the court in the Washington Action denied the Rubinsteins' motion for a change of venue. (Washington Action, Doc. # 45). The Rubinsteins' appeal of the order denying their request for a change of venue was unsuccessful. (Washington Action, Doc. #'s 57, 59).

On December 21, 2009, the Rubinsteins filed a second action against the Hagens Firm in the U.S. District Court for Eastern District of Pennsylvania, docketed at No. 09-cv-06065 ("the Second E.D. Pa. Action"). In their Complaint, they asserted claims of fraud and intentional infliction of emotional distress against the Hagens Firm. (Complaint ¶¶35-50, 62-65) (Second E.D. Pa. Action, Doc. # 1). Also, the Rubinsteins named the law firm representing the Hagens Firm in the Washington Action, McNaul Ebel Nawrot & Helgren PLLC ("McNaul"), as a co-defendant in the lawsuit.

On March 16, 2010, the court placed the Second E.D. Pa. Action in civil suspense. (Second E.D. Pa. Action, Doc. # 34), leaving the Washington Action as the sole, active case.

Several months later, the forum battle began anew in the Pennsylvania federal district court and then in this court.

On August 5, 2010, two days after the Debtor filed her chapter 13 bankruptcy case in this court, she filed motions for a status conference in both the First E.D. Pa. Action and the Second E.D. Pa. Action. (First E.D. Pa. Action, Doc. # 30; Second E.D. Pa. Action, Doc. # 38). In light of the automatic stay of the Washington Action, see 11 U.S.C. §362(a), the Rubinsteins' counsel argued to the district court that it was appropriate to allow the Pennsylvania actions, not the Washington action, to proceed. (Tr. 10/1/10, at 3-4, 6) (First E.D. Pa. Action, Doc. # 43).

On October 1, 2010, the district court initially decided to await the outcome of a motion

for relief from the automatic stay that the Hagens Firm stated would be filed shortly, before making any decision on the Rubinsteins' request. (Id. at 16-17).

The Hagens Firm filed its promised motion for relief from the automatic stay in this court on October 12, 2010. After a hearing on November 4, 2010, I granted the Hagens Firm limited relief from the automatic stay, entering an order authorizing the Hagens Firm to prosecute its claims against the Debtor in the Washington Action and any counterclaims it may have in both the First E.D. Pa. Action and the Second E.D. Pa. Action to a final non-appealable judgment, but prohibiting execution on any judgment obtained, absent further bankruptcy court order. (Bky. No. 10-16541, Doc. # 53).

The Debtor appealed this court's November 4, 2010 Order granting the Hagens Firm relief from the automatic stay. (Bky. No. 10-16541, Doc. # 57). On February 24, 2011, the district court affirmed this court's stay relief order.[2] (No. 10-cv-07099, Doc. # 21). The Debtor

---

[2] The bankruptcy court order was accompanied by an oral bench opinion, in which I stated that, in deciding whether it was appropriate to grant relief from the automatic stay to an unsecured creditor (the Hagens Firm), I had considered and evaluated the various considerations set forth in In re Chan, 355 B.R. 494 (Bankr. E.D. Pa. 2006) and In re Asousa Patnership, 264 B.R. 376 (Bankr. E.D. Pa. 2001). (Tr. 11/4/10, at 57-58) (Bky. No. 10-16541, Doc. # 59).

In its order affirming my decision, the district court provided a convenient, concise summary of the specific reasons for my decision in the bankruptcy court:

> Judge Frank then found several factors to be "decisive" as to why he would grant the Motion for Relief from the automatic stay.
>
> First, one court should resolve all of the disputes between the parties to the greatest extent possible. Once the defendants in any of the prior cases filed an answer, the compulsory counterclaim rule would likely apply, making it possible to resolve in a single action. Second, the parties agreed that the underlying litigation should take place in a district court, but they disagreed as to which district court, Appellant preferring Pennsylvania and Appellees preferring Washington. However, the Court and the Western District of Washington have already resolved this issue and determined the action should go forward in
>
> (continued...)

has appealed the district court's order to the Court of Appeals. (See No. 10-cv-07099, Doc. # 22).

On February 22, 2011, the Hagens Firm filed the motion that gives rise to the present dispute: the Motion to Extend Time to File Complaint to Determine Dischargeability Pursuant to Fed. R. Bankr. P. 4007 ("the Motion") (Bky. No. 10-16541, Doc. # 73). The Debtor filed a response to the Motion on March 14, 2011. (Bky. No. 10-16541, Doc. # 79). A hearing on the Motion was held on March 29, 2011. The contested matter is now ready for a decision.[3]

Finally, there have been some recent procedural developments in the Pennsylvania district court that bear mention. In April 2011, the Hagens Firm filed motions in both the First E.D. Pa. Action and the Second E.D. Pa. Action requesting that the court transfer the actions to the Western District of Washington for consolidation with the Washington Action.[4] In the orders

---

[2](...continued)
Washington.

Third, allowing the action to proceed in the district courts would preserve the parties' right to a jury trial. Fourth, granting stay relief would alleviate the concern that Appellant filed the bankruptcy case for the purpose of forum shopping . . . . Fifth, there was no prejudice to Appellant if stay relief was granted.

(District Court Order dated February 24, 2011) (No. 10-cv-07099, Doc. # 21, at n.1) (emphasis in original).

[3]     At the conclusion of the March 29, 2011 hearing, I kept the record open, over the Debtor's objection, to permit the Hagens Firm to supplement the record with additional evidence at a hearing to be held on April 18, 2011. On April 6, 2011, the Hagens Firm withdrew its request for a hearing to supplement the record (see Bky. No. 10-16541, Doc. # 85) and the hearing scheduled for April 18, 2011 was canceled.

[4]     The Hagens Firm filed the motion in the First E.D. Pa. Action on April 11, 2011 and in the Second E.D. Pa. Action on April 12, 2011. (See First E.D. Pa. Action Doc. # 41; Second E.D. Pa. Action Doc. # 55).

entered in the two cases on May 5, 2011 and May 16, 2011 respectively, the district court granted those motions, effectively consolidating all of the litigation between the Hagens Firm and the Rubinsteins in the U.S. District Court for the Western District of Washington. (See First E.D. Pa. Action, Doc. # 44; Second E.D. Pa. Action, Doc. # 60).

### III.  DISCUSSION

#### A.  Applicable Statutory Provisions and Rules of Court

Section 1328(a) of the Bankruptcy Code directs the bankruptcy court to grant a discharge of a chapter 13 debtor's debts "after completion by the debtor of all payments under the plan." 11 U.S.C. §1328(a).  The chapter 13 discharge is subject to certain exceptions, including any debt "of the kind specified in . . . paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)."  11 U.S.C. §1328(a)(2).

The procedures governing the determination whether a debt is excepted from discharge are found in the Federal Rules of Bankruptcy Procedure.  Fed. R. Bankr. P. 7001 provides that a proceeding to determine the dischargeability of a debt is an adversary proceeding, which is commenced by filing a complaint, see Fed. R. Bankr. P. 7003.

The general rule is that a complaint to determine the dischargeability of a debt "may be filed at any time," Fed. R. Bankr. P. 4007(b).  This general rule is subject to exceptions found in Rule 4007(c).  In chapter 13 cases, the Rule 4007(c) exceptions are for debts rendered nondischargeable by 11 U.S.C. §523(a)(2) and (4).[5]  For such debts, the deadline for filing a

---

[5] Rule 4007(c) applies the time deadline to the categories of nondischargeable debts referenced in 11 U.S.C. §523(c), which refers to debts that are nondischargeable under §523(a)(2), (a)(4) and (a)(6).  However, as a matter of substantive law, 11 U.S.C. §1328(a)(2) does not include §523(a)(6)
(continued...)

nondischargeability complaint is 60 days after the first date set for the meeting of creditors under

§ 341(a).[6]

Also, and most pertinent to this contested matter, Rule 4007(c) permits the court to

extend the deadline for filing a complaint to determine the nondischargeability of a debt:

> On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

Id.

Rule 4007(c) has two requirements that must be satisfied before an extension of time may

be granted:

> (1) the motion must be filed before the time has expired;[7] and,
>
> (2) there must be "cause" for an extension.

In opposing the Motion, the Debtor does not assert that the Motion was untimely,[8] but

---

[5](...continued)
among the debts excepted from discharge.

[6] Rule 4007(c) further requires that the court "give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002." Fed. R. Bankr. P. 4007(c). There is no dispute that the Hagens Firm received timely notice.

[7] See, e.g., In re Weinberg, 197 Fed. Appx. 182, 185 (3d Cir. 2006); see also In re Rowland, 275 B.R. 209, 212 (Bankr. E.D. Pa. 2002); In re Biederman, 165 B.R. 783, 788 (Bankr. D.N.J. 1994).

[8] In this case, the Clerk notified the Debtor's creditors, including the Hagens Firm, that the deadline for filing a nondischargeability complaint under 11 U.S.C. §523(a)(2) or (4) was February 20, 2011. In 2011, February 20th fell on a Sunday and the following day (Monday) was President's Day, a federal holiday. Therefore, pursuant to Fed. R. Bankr. P. 9006(a)(1), the last day for filing a nondischargeability complaint was extended to Tuesday, February 22, 2011. The Hagens Firm timely filed the Motion on February 22, 2011.

does maintain that "cause" does not exist to extend the deadline.

## B.  Case Law on "Cause" Under Rule 4007(c)

The Federal Rules of Bankruptcy Procedure do not define the term "cause" as it is used in Rule 4007(c).

Many courts construe the term "cause" narrowly under Rule 4007(c).  See In re Garner, 339 B.R. 610, 611 (Bankr. W.D. Tex. 2006) (grounds for the requested extension must be "compelling"); accord Scaffidi v. DeSoto, 2006 WL 4452830, at *3 (Bankr. D.N.J. Mar. 21, 2006); In re Desiderio, 209 B.R. 342, 346 (Bankr. E.D. Pa. 1997); see also In re Grillo, 212 B.R. 744, 746 (Bankr. E.D.N.Y. 1997) (interpreting Rule 4004).  These courts perceive strict enforcement of the relatively short deadline for nondischargeability claims subject to 11 U.S.C. §523(c) – 60 days from the first date set forth the meeting of creditors –  as well as a narrow application of court's power under Rule 4007(c) to extend the deadline for cause, as furthering two important bankruptcy policies: (1) the prompt administration of bankruptcy cases, and (2) the fresh start goal of bankruptcy relief.  The prompt deadline allows the debtor "to enjoy finality and certainty of relief from financial distress as quickly as possible."  In re Marino, 213 B.R. 846, 854 (B.A.P. 9th Cir. 1997); accord In re Walker, 195 B.R. 187, 206 (Bankr. D.N.H. 1996); In re Rodolfy, 150 B.R. 347, 348 (Bankr. M.D. Pa. 1992); In re Pace, 130 B.R. 338, 340 (Bankr. N.D. Fla. 1991).

The view that Rule 4007(c) is to be strictly construed to limit extensions of time is not universally held.  One court has stated in the context of considering Rule 4007(c)'s "cause" standard, "there are competing interests at stake."  In re Polinski, 2008 WL 8444830, at *3

(B.A.P. 9th Cir. Feb. 19, 2008). The Polinski court further observed:

> [T]he Bankruptcy Code and the policies underlying the debtor's discharge make clear, the fresh start is reserved for the honest but unfortunate debtor. . . . [I]f the time deadline for filing a dischargeability complaint against a dishonest debtor is missed, in the majority of instances, the debt at issue is discharged and even the dishonest debtor may walk away with a clean slate.

Id.; see also Matter of Amezaga, 192 B.R. 37, 41 (Bankr. D.P.R. 1996) (stating that because the Bankruptcy Code provides "for the balancing of interests" of debtors and creditors, requests for extensions of time under Rule 4007(c) should be "granted liberally absent . . . bad faith") (quoting In re Kellogg, 41 B.R. 836, 838 (Bankr. W.D. Okla. 1984)); Matter of James, 187 B.R. 395, 397 (Bankr. N.D. Ga. 1995) ("cause should receive a liberal construction") (internal quotation marks omitted).

In evaluating whether "cause" exists for an extension of time under Rule 4007(c), courts have weighed as many as seven potentially relevant factors. Some courts have grouped together the following five factors:

1. whether debtor refused in bad faith to cooperate with creditor;

2. whether creditor had sufficient notice of the deadline and the information to file an objection;

3. the possibility that the proceedings pending in another forum will result in collateral estoppel on the relevant issues;

4. whether creditor exercised diligence; and

5. the complexity of the case.

E.g., In re Ballas, 342 B.R. 853, 856 (Bankr. M.D. Fla. 2005), aff'd, 212 Fed. Appx. 867 (11th Cir. 2006); see also In re Stonham, 317 B.R. 544, 547 n.1 (Bankr. D. Colo. 2004); In re Nowinski, 291 B.R. 302, 305-6 (Bankr. S.D.N.Y 2003).

Other courts have considered and focused on:

1. whether granting the delay will prejudice the debtor; and

2. the length of the delay and its impact on efficient court administration.

See In re Newton, 53 F.3d 339, at *2 (9th Cir. 1995) (Table); In re Duenez, 2007 WL 2076993, at *2 (Bankr. W.D. Tex. July 13, 2007).

The determination whether cause exists for an extension of time is committed to the discretion of the bankruptcy court. E.g., Ballas, 342 B.R. at 856; Stonham, 317 B.R. at 547. Ultimately, "the determination of 'cause' by its very nature is fact driven and thus, must be analyzed on a case by case basis." Stonham, 317 B.R. at 547-48.

### C. The Parties' Contentions

In the Motion, the Hagens Firm reported that on February 14, 2011, the Washington Court entered an order granting it leave to file a second amended complaint in the Washington Action, that it had filed the second amended complaint and that a response to the Complaint was due on February 28, 2011.[9] The Hagens Firm then stated that, as a result of the filing of the

---

[9] The docket in the Washington Action reflects that the Hagens Firm sought leave to file the second amended complaint on December 20, 2010 and that the Rubinsteins contested the motion. (Washington Action, Doc. #'s 82, 86). After the motion was granted on February 14, 2011, the Rubinsteins did not file a response by the February 28, 2011 due date. On March 25, 2011, the Hagens Firm filed a motion: (1) asserting that the Rubinsteins' failure to respond was a tactical decision designed to aid still another effort to compel the transfer of the litigation to the Pennsylvania federal district court and (2) requesting that the Hagens Firm not be required to enter a default against the Rubinsteins in the Washington Action pending the outcome of the Hagens Firm's efforts to obtain a transfer of the two Pennsylvania actions to the Western District of Washington. (Washington Action, Doc. # 96). The Washington Court granted the Hagens Firm's motion on May 6, 2011. (Washington Action, Doc. # 99). As stated earlier, the Hagens Firm ultimately succeeded in its efforts to have the Pennsylvania cases transferred to Washington by the orders dated May 5, 2011 and May 16, 2011 entered in the First E.D. Pa. Action and the Second E.D. Pa. Action.

second amended complaint, it expected discovery in the Washington Action finally to commence. (See Motion ¶¶ 15, 19). The Hagens Firm asserted that this discovery is necessary to determine whether it has grounds to file a nondischargeability complaint.

At the hearing on the Motion, the Hagens Firm's counsel refined its position. Its counsel stated that, although the Hagens Firm believes that it has very strong claims for breach of contract and breach of fiduciary duty and has reasonable suspicions that fraudulent conduct occurred,[10] it is uncertain that it presently has the factual basis to assert in a complaint that the Debtor committed fraud. Consequently, it asserts that some discovery is necessary before it can determine whether it can assert a nondischargeability claim under either 11 U.S.C. §§523(a)(2) or (a)(4). The Hagens Firm's counsel further suggested that both discharge exceptions (§§523(a)(2) and (a)(4)) require proof of fraudulent conduct.[11]

---

[10]   In the Motion, the Hagens Firm stated:

> [The Hagens Firm] believes that the nature of [its] claims [in the Washington Action] are such that they will constitute grounds for determining that the Debtor's debt to [the Hagens Firm] is non-dischargeable. [The Hagens Firm] believes, therefore, that discovery in the Washington Action may very well uncover evidence constituting grounds for seeking a determination as to the dischargeability of the Debtor's debt to [the Hagens Firm] under 11 U.S.C. § 523(a)(2) and (a)(4).

(Motion ¶20) (Bky. No. 10-16541, Doc. # 73).

[11]   The Hagens Firm reads the statute a bit too broadly. The §523(a)(4) discharge exception for debts arising while a debtor is acting in a fiduciary capacity encompasses "defalcation" as well as "fraud." Thus, separate and apart from the discharge exception for debts arising while the debtor was acting in a fiduciary capacity, §523(a)(4) also excepts from discharge debts for "embezzlement" and "larceny." See, e.g., Alan N. Resnick & Henry J. Sommer (eds.), 4 Collier on Bankruptcy ¶ 523.10[1][d], at 523–72 (16th ed. 2010); In re Hatch, 2009 WL 3208694, at * 5 (Bankr.E.D.Pa. Sept.30, 2009).

I understand the Hagens Firm's point to be that a mere breach of contract is not a sufficient basis for a determination of nondischargeability; rather, some heightened, culpable scienter is

(continued...)

-12-

At bottom, the Hagens Firm's position that "cause" exists for an extension of the Rule 4007(c) time deadline is grounded in: (1) its need for discovery of further information regarding the Debtor's conduct while she and the Hagens Firm were in their contractual relationship and (2) what the Hagens Firm perceives as the Rubinsteins' relentless, stonewalling litigation over procedural issues in the Washington Action, which has prevented the Hagens Firm from obtaining any meaningful discovery with respect to the substance of the parties' dispute for almost two years.

In opposing the Motion, the Debtor's position is straightforward – the Debtor asserts that the Hagens Firm has not been diligent. The Debtor emphasizes that whatever obstacles may have prevented the Hagens Firm from obtaining discovery in any other court, ample discovery tools were available to the Hagens Firm in the bankruptcy court, most notably, an examination pursuant to Fed. R. Bankr. P. 2004.[12] Because the Hagens Firm failed to interrogate the Debtor at the meeting of creditors held pursuant to 11 U.S.C. §341 or to invoke its discovery rights under Rule 2004, the Debtor argues that the Hagens Firm did not diligently attempt to ascertain whether it had grounds to file a nondischargeability complaint and therefore, cannot make out a case for

---

[11](...continued)
required. That point is well taken. See In re Tyson, 2011 WL 2162905, at *5-7 (Bankr. E.D. Pa. May 4, 2011).

[12]     Rule 2004 provides, in part:

>  (a) Examination on Motion. On motion of any party in interest, the court may order the examination of any entity.
>
>  (b) Scope of Examination. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. . . .

"cause" under Rule 4007(c).

The Debtor relies heavily on and asks this court to follow cases such as <u>Desiderio</u>, <u>Ballas</u> and <u>In re Mendelsohn</u>, 202 B.R. 831 (Bankr. S.D.N.Y. 1996), all of which involved the denial of extensions of time to creditors who did not invoke formal or informal discovery procedures to investigate the merits of a potential nondischargeability action and who then requested an extension of time shortly before the expiration of the Rule 4007(c) deadline. <u>See also</u> <u>In re Woods</u>, 260 B.R. 41, 44-45 (Bankr. N.D. Fla. 2001) (collecting cases).

### D. "Cause" for an Extension of Time Under Rule 4007(c) Exists in this Case

For several reasons, I am unpersuaded by the Debtor's argument

The Debtor appears to suggest that "diligence" is the single litmus test for "cause" under Rule 4007(c). Respectfully, I disagree. While "diligence" is a very significant consideration in the decision whether to extend the deadline for filing a nondischargeability complaint, other factors may come into play, as other courts have recognized. <u>See</u> Part III.B., <u>supra</u>.

Even assuming that consideration of the creditor's lack of diligence, by itself, can be "outcome determinative" in the manner suggested by the Debtor, I am satisfied that, considering all of the circumstances presented here, the Hagens Firm was not so passive as to preclude a finding of "cause" under Rule 4007(c).

In arguing that the Hagens Firm conduct was inadequate, the Debtor overlooks a significant distinction between the facts in this case and those of the cases she cites. Here, the creditor (the Hagens Firm) previously requested and obtained relief from the automatic stay to prosecute its claim to judgment in a nonbankruptcy forum. While the grant of stay relief prior to

the expiration of the Rule 4007(c) deadline is not dispositive on the issue whether the deadline should later be extended for cause, in the particular circumstances of this case, the considerations that caused me to grant stay relief for "cause" under 11 U.S.C. §362(d) contribute to my conclusion that "cause" exists to extend the Rule 4007(c) deadline.

Admittedly, when the stay motion was before the court, neither the parties nor the court focused on the impending deadline for the institution of nondischargeability proceedings. Rather, the merits of the stay relief motion was analyzed as an issue of appropriate bankruptcy case administration. At that time, the outcome of the parties' competing claims appeared to be relevant to at least two chapter 13 plan confirmation issues: (a) the minimum distribution to unsecured creditors;[13] and (b) the allocation of that distribution among the Debtor's unsecured creditors (including the Hagens Firm).[14] In resolving the stay relief motion, the key issue for the court was to determine the most appropriate forum for the resolution of the parties' competing claims. (See Tr. 11/4/10, at 57) (Bky. No. 10-16541, Doc. # 59). See generally In re Wilson, 116 F.3d 87, 91 (3d Cir. 1997) (the legislative history of §362(d) expressed Congress' intention

---

[13]    The Debtor denies that she is liable to the Hagens Firm and asserts that it is the Hagens Firm that owes her a substantial sum of money. Significantly, she did not claim any exemption under 11 U.S.C. §522(b)(2), (d) in her interest in the potential recovery against the Hagens Firm. (See Debtor's Schedule C) (Bky. No. 10-16541, Doc. # 10). Consequently, if her claim proves meritorious, her recovery could affect the minimum distribution that must be made to her unsecured creditors in order for her to satisfy the requirements for confirmation of her chapter 13 plan. See 11 U.S.C. §1325(a)(4).

[14]    The Debtor's proposed chapter 13 plan provides for a pro rata distribution to allowed, non-priority, unsecured claims. (See Chapter 13 Plan ¶4(a)) (Bky. No. 10-16541, Doc. # 18). Thus, when the stay relief motion was before the court in November 2010, it appeared that, at some point in the future, the court would have to determine the allowed amount, if any, of the Hagens Firm's claim so that the pro rata share due to the various creditors with allowed claims could be calculated. I note, however, that a review of the court's Claims Register reveals that since the grant of relief from the automatic stay, the March 22, 2011 deadline for filing claims, (see Docket Entry No. 27), has expired and the Hagens Firm has not filed a proof of claim.

Case 10-16541-elf    Doc 93    Filed 06/17/11    Entered 06/20/11 10:18:33    Desc Main
                    Document      Page 16 of 19

that there are cases in which it is "more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere") (quoting S. Rep. No. 95-989, at 50 (1978)).

In granting the Hagens Firm's motion for relief from the automatic stay, I concluded, consistent with the belief of both parties, that the best forum for the litigation of their competing claims is the federal district court, with the proper venue to be determined by the Washington and Pennsylvania district courts.  See n.2, supra,  Once that decision was made, there was (and continues to be) little reason for the parties to litigate their issues in the bankruptcy court – particularly in light of the likely significant evidentiary overlap between the merits of the parties' competing claims and the merits of the Hagens Firm's potential nondischargeability claims.  The initiation of proceedings under Rule 2004 or the filing of an adversary complaint would largely duplicate the proceedings that this court has already authorized the Hagens Firm to prosecute in the district court.

Further, once stay relief was granted in November 2010 and the Hagens Firm was permitted to resume prosecution of its claims against the Debtor, it is understandable that the Hagens Firm then expected that the initial discovery process would take place in the Washington Action and that the discovery obtained would enable it to determine the viability of its potential nondischargeability claims under 11 U.S.C. §523(a)(2) and (a)(4).

In these circumstances, I conclude that the Hagens Firm's failure to invoke its discovery rights under Fed. R. Bankr. P. 2004 does not constitute a lack of diligence sufficient to prevent it from establishing cause for an extension of time under Fed. R. Bankr. P. 4007(c) to file a

nondischargeability complaint.[15]

Certain other Rule 4007(c) considerations described in Part III.B., <u>supra</u>, contribute to my conclusion that cause exists for requested extension.

Although the Hagens Firm had sufficient notice of the deadline for filing a nondischargeability complaint, it presently lacks the information it needs to determine the propriety of filing such a complaint and it is entitled to further discovery before deciding whether to file a complaint. I have reviewed the second amended complaint in the Washington Action and see no factual allegations suggesting that the Hagens Firm is aware of information that would support a nondischargeability claim in the bankruptcy court based on fraud. At the same time, the Hagens Firm's allegations, if true, give rise to a reasonable suspicion that some type of dishonest conduct may have occurred.[16] In these circumstances, I find the Hagens Firm's argument that it needs discovery to determine the propriety of instituting an adversary proceeding under §§523(a)(2) or (a)(4) is reasonable.

Next, consistent with my prior determination to grant relief from the automatic stay, considerations of judicial economy support the decision that the parties' litigation should proceed further in the Washington Action before nondischargeability litigation commences in the bankruptcy court. The litigation in the Washington Court may either: (1) obviate the need for

---

[15] That said, the Debtor's position on the issue is not frivolous. The Hagens Firm's failure to take discovery through Rule 2004, combined with the filing of the Motion on the last day available under Rule 4007(c), was risky. The far better practice would have been to seek the court's guidance on this issue by filing the motion in time for the hearing to be held before the expiration of the nondischargeability complaint deadline.

[16] Obviously, the statements in the complaint in the Washington Action are nothing more than allegations and I have formed no view whatsoever on the merits of any claims of any of the parties or regarding the dischargeability of any valid claim that the Hagens Firm may hold against the Debtor.

any dischargeability litigation in this court (if, for example, discovery does not yield information that the Hagens Firm needs to assert a nondischargeability claim) or (2) substantially reduce the scope of any nondischargeability litigation that may prove necessary in this court (through the application of collateral estoppel or otherwise).

Finally, while I make no finding that the Debtor has acted in bad faith, my decision is influenced by the Debtor's conduct. In my judgment, she bears some of the responsibility for the delays in the commencement of discovery in the Washington Action that could have provided the Hagens Firm with the information necessary to make a decision whether to initiate nondischargeability litigation in this court. Her intensely aggressive litigation tactics in the Washington Action have caused almost two years to pass without the filing of an answer to the complaint or the initiation of any substantial pretrial discovery. Had she been less zealous in expending her resources (and causing the Hagens Firm to expend its resources) on pretrial motions, motions for reconsideration and appeals, it may well have been appropriate to more strictly apply the short Rule 4007(c) time deadline.

### D. The Extension of Time Being Granted

While I will grant the Hagens Firm an extension of time under Rule 4007(c), I remain aware that bankruptcy policy underlying the rule is designed to compel creditors to initiate their dischargeability proceedings as soon as possible. Once the Hagens Firm has conducted some discovery in the Washington Action, it will have to decide promptly whether to file a nondischargeability complaint in this court. Compelling the Hagens Firm to make this decision

as soon as possible will accord the Debtor with some of the psychological benefits that bankruptcy relief is meant to provide, thereby effectuating the fresh start purposes of the Bankruptcy Code. If the Hagens Firm decides not to file a nondischargeability complaint, the Debtor will know that her debt is dischargeable upon successful completion of a confirmed chapter 13 plan. If the Hagens Firm decides to file a nondischargeability complaint, at least the Debtor will be freed from the "purgatory" status (of not knowing whether she will have litigate over dischargeability) created by the extension,

Therefore, I intend to closely monitor the Washington Action, through periodic status hearings, so that I may set the earliest possible deadline for the filing of a nondischargeability complaint.

## IV. CONCLUSION

For the reasons set forth above, the Motion will be granted. An order consistent with this Memorandum will be entered.

Date:  **June 17, 2011**

                                        **ERIC L. FRANK**
                                        **U.S. BANKRUPTCY JUDGE**